[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14487
Non-Argument Calendar

_____

D. C. Docket No. 03-00295-CV-T-17EAJ

LEROY PINCKNEY,

Plaintiff-Appellant,

versus

JOHN E. POTTER, Postmaster General,
United States Postal Service,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 28, 2006)**

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Plaintiff Leroy Pinckney appeals the entry of summary judgment in favor of

John Potter, the Postmaster General of the United States Postal Service ("the Postal Service"), on Pinckney's claims of violations of the Rehabilitation Act, 29 U.S.C. § 701, et seq. Pinckney alleged that the Postal Service unlawfully refused to hire him because it regarded him as disabled. After review, we reverse.

## I. FACTS

Pinckney, a veteran of the United States Army, was honorably discharged in 1990 after he tore a ligament in his knee.[1] At the time Pinckney was discharged, the Department of Veterans Affairs ("VA") assessed that Pinckney was twenty percent disabled, meaning that his injuries limited his future earnings by an estimated twenty percent. Ten percent of this rating was assessed on account of Pinckney's knee injury, while the remaining ten percent related to a back injury Pinckney sustained in 1980. Because he was injured during active military service, Pinckney receives disability payments correlated to the twenty percent impairment rating.

### A. Denial of Employment

Between 1990 and 1995, Pinckney worked in the private sector without incident, including as a tractor-trailer operator. In 1995, Pinckney applied to the Postal Service in Tampa, Florida for the position of Mail Handler. Pinckney

---

[1]Pinckney's torn ligament was successfully repaired surgically.

passed the required postal examination with a high score, and the Postal Service placed him on its job register. Pinckney subsequently passed a drug screening, an interview, and a strength and stamina test.

In October 1995, the Postal Service tentatively selected Pinckney for employment, pending a suitability determination. Due to a Postal Service hiring freeze, Pinckney's application was delayed until early 1996, when the Postal Service began hiring again. At that time, the Postal Service asked Pinckney to obtain medical clearance before he was placed in the Mail Handler position.[2]

On April 12, 1996, Pinckney submitted to the Postal Service a letter from Dr. Steven Scott at the James A. Haley Veterans' Hospital. Scott's two-sentence letter stated summarily that Pinckney was able to perform all functional requirements of the Mail Handler position as listed by the Postal Service. Laura Henley, a Human Resources Specialist for the Postal Service, received Pinckney's submission and determined that it was insufficient to establish Pinckney's functional capacity. Henley instructed Pinckney that he needed to submit additional information, including an independent doctor's evaluation of his functional capacity from a non-VA doctor.

After receiving Pinckney's reply, on May 7, 1996, Pinckney visited Dr.

---

[2] The Postal Service made this request because VA records informed the Postal Service of Pinckney's twenty percent disability status.

Carlos Lopez at the Tampa Orthopaedic and Sports Medical Center for a pre-employment evaluation. Dr. Lopez examined Pinckney and reviewed Pinckney's x-rays and other medical records. Based on this examination and review, Dr. Lopez recommended to the Postal Service that Pinckney "could perform the postal job requirements" of the Mail Handler position, including lifting "more than 70 pounds."[3] Dr. Lopez also concluded that Pinckney had good coordination, was healing well, and could "work in any atmosphere" and for "any hours."

Dr. Lopez remarked, however, that while Pinckney could meet all the functional requirements "well at this time," Pinckney "has a greater than a 50% chance of having severe back problems in the near future and requiring [back] surgery." Dr. Lopez also noted that "[Pinckney's] knee might hold well, but also the chances of osteoarthritis and requiring surgery are greater on him. Obviously heavy work like lifting, standing, changing positions may be an aggravating factor."

Henley forwarded Pinckney's medical submissions to Dr. Felix Vicente, a Postal Service medical officer. Dr. Vicente reviewed Pinckney's submissions and

---

[3]The district court's summary judgment order states that the duties of the Mail Handler position "include picking up and carrying seventy pound boxes." Although both parties do not dispute this seventy pound lifting requirement, no evidence in the record identifies the complete list of functional requirements of the Mail Handler position.

completed a Postal Service form entitled "Medical Examination & Assessment."[4]

Dr. Vicente noted Pinckney's knee and back injuries, and he quoted Dr. Lopez's

statements that Pinckney "has a greater than 50% change of having severe back

problems in the near future and requiring surgery" and that "heavy work like

lifting, standing, [and] changing positions may be an aggravating factor." Dr.

Vicente assessed that Pinckney had a moderate risk of incurring job-related injury

or illness within the next six months.

Upon reading Dr. Vicente's medical opinion, Henley concluded that

Pinckney would be unable to perform the duties of the Mail Handler position. In a

letter dated May 29, 1996, Henley informed Pinckney that he had "been found

medically unsuitable for the position of PTR Mail Handler" and that his "name

ha[d] been removed from the active register of eligibles." Henley's letter

explained that "[p]ostal employment in this position or any entry position" would

endanger Pinckney's health, stating that:

> A review of your medical records and evaluation by our Medical
> Officer indicates that performance of the duties required of a Mail
> Handler would be at significant risk of causing severe back problems
> that would require surgery for stabilization. Under these conditions,
> Postal employment in this position or any entry position would place
> your personal health and safety in jeopardy.

---

[4]Dr. Vicente's assessment is not in the record before this Court, although apparently it was an exhibit to Henley's deposition. Nonetheless, it does not appear that there is any dispute about the contents of Dr. Vicente's report.

Defs' Exh. 9 (emphasis added).

On June 12, 1996, Pinckney asked the Postal Service to reconsider its decision. Pinckney asserted that he could perform all the duties of the Mail Handler position and submitted a more detailed letter from his VA physician, Dr. Scott. Dr. Scott attested that he had treated Pinckney for three years and had observed and examined him frequently. Dr. Scott's letter explained that during his evaluation, Pinckney was able to complete a series of physical tests without difficulty, including lifting weights up to seventy pounds and pushing them for fifteen minutes. Dr. Scott concluded that "based on my observation, and the test that were [sic] performed, Mr. Pinckney can perform all of the functional requirements of the job." Dr. Scott made no reference to any risks posed by Pinckney performing the Mail Handler position or any future surgery he was likely to require.

On June 14, 1996, Henley denied Pinckney's request for reconsideration in a final letter. Henley noted that Pinckney's medical records showed that in 1994, Pinckney had asked the VA for increased disability benefits, something "unlikely one would attempt . . . if there was no deterioration or increase in the symptoms." Henley also explained that Dr. Lopez's opinion carried more weight than Dr. Scott's because Dr. Lopez was an orthopedist. Henley reiterated her conclusion

6

that "performance of entry level duties would aggravate your condition."

## B.    Subsequent Hiring

Following the Postal Service's final rejection of Pinckney's application, Pinckney continued his employment as a tractor-trailer operator for a private firm. Roughly four years later, in September 2000, Pinckney reapplied for employment with the Postal Service, this time as a part-time tractor-trailer operator. The Postal Service again requested that Pinckney provide medical information concerning his knee and back conditions.

Pinckney visited an orthopedist, who examined Pinckney and evaluated Pinckney's medical records. The orthopedist concluded that Pinckney's condition was stable and that there was no reason he could not perform the duties of the position. Shortly thereafter, the Postal Service hired Pinckney as a tractor-trailer operator, a position Pinckney has held without incident since that time.

## C.    Procedural History

In March 1997 – approximately nine months after Pinckney received Henley's final rejection letter – Pinckney contacted an Equal Employment Occupation Commission ("EEOC") representative to complain that the Postal Service had discriminated against him. After Pinckney's complaint was initially dismissed as untimely, Pinckney appealed to the EEOC. The EEOC reversed the

dismissal and remanded Pinckney's complaint to the agency on August 3, 2000. The EEOC issued a final denial of Pinckney's claim on December 3, 2002.

On February 20, 2003, Pinckney timely filed this civil suit against John Potter, the Postmaster General of the U.S. Postal Service, in the Middle District of Florida. Pinckney's complaint sought damages and fees pursuant to Section 505 of the Rehabilitation Act of 1973, see 29 U.S.C. § 794a, for discrimination on the basis of physical handicap. Pinckney contended that the Postal Service wrongly regarded him as disabled and rejected his Mail Handler job application on that unlawful basis.

The Postal Service moved for summary judgment, and on June 16, 2005, the district court granted that motion. Pinckney timely appealed.

## II. DISCUSSION

Claims under the Rehabilitation Act are analyzed under the standards applicable to the Americans with Disabilities Act and as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). See 29 U.S.C. § 794(d); see also Holbrook v. City of Alpharetta, 112 F.3d 1522, 1529 (11th Cir. 1997).[5] Under this standard, in order to succeed on his Rehabilitation Act claim,

_____

[5]We review the district court's grant of summary judgment de novo, viewing all evidence in the light most favorable to Pinckney. Merritt v. Dillard Paper Co., 120 F.3d 1181, 1184 (11th Cir. 1997); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).

Pinckney must first assert a <u>prima facie</u> case of disability discrimination. More specifically, Pinckney must show that "(1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability." <u>Ellis v. England</u>, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted).

## A. Disability

As noted, as the first prong of a <u>prima facie</u> case, a plaintiff must establish that he has a disability. <u>Id.</u> "Being regarded as" disabled fits under the Rehabilitation Act's definition of "disabled." <u>Cash v. Smith</u>, 231 F.3d 1301, 1305 (11th Cir. 2000) (citing 42 U.S.C. § 12102(2) and 34 C.F.R. § 104.3(j)(1)). Here, Pinckney argues that even though he is not actually disabled, he is disabled under the law because the Postal Service erroneously regarded him as disabled and discriminated against him because of that erroneously perceived disability.

Where a plaintiff alleges that the defendant regarded him as disabled, he must prove more than that the defendant perceived him to be impaired by his medical condition. Specifically, to satisfy this first prong, Pinckney must introduce evidence that the Postal Service regarded him to be so impaired or disabled that he was substantially limited in his ability to perform a major life activity. See <u>Toyota Motor Mfg, Ky., Inc. v. Williams</u>, 534 U.S. 184, 194-95, 122

9

S.Ct. 681, 690 (2002).

In this case, the sole "major life activity" at issue is working. 29 C.F.R. § 1630.2(i). "To be substantially limited in the major life activity of working, an individual must be precluded from more than one type of job, even if the job foreclosed is the individual's job of choice." Cash, 231 F.3d at 1306. A person's inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. 29 C.F.R. § 1630.2(j)(3)(i); see also Hilburn v. Murata Elec. N. Am., Inc., 181 F.3d 1220, 1227 (11th Cir. 1999). Rather, "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491, 119 S.Ct. 2139, 2151 (1999).

Thus, Pinckney is "disabled" under the Rehabiltation Act if the Postal Service regarded him as substantially limited in his ability to work in a broad class of jobs. Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1327 n.2 (11th Cir. 1998). The Postal Service insists that Pinckney has produced no evidence that it regarded him as unable to perform a broad class of jobs. The Postal Service contends that the evidence presented by Pinckney shows only that the Postal Service regarded Pinckney as unable to perform the specific duties of the 1996

10

Mail Handler position. In particular, the Postal Service emphasizes that Henley's May 29, 1996 letter denied Pinckney's job application on the narrow grounds that "performance of the duties required of a Mail Handler" would place Pinckney "at significant risk" of sustaining a severe back injury requiring surgery.

Contrary to the Postal Service's characterization of the evidence, the very letter which it quotes can also be read to suggest that the Postal Service viewed Pinckney as incapable of performing a much wider range of jobs than merely that of Mail Handler. Henley's May 29, 1996 letter went on to state that in the Postal Service's view, Pinckney's back and knee conditions meant that "[p]ostal employment in [the Mail Handler] position or any entry position would place your personal health and safety in jeopardy." (Emphasis added). Henley reiterated this point in her June 14, 1996 letter to Pinckney, and again in her deposition, when she stated that "[i]t was my understanding . . . that working in this or any of our entry-level positions" would be prohibited by Pinckney's condition. Henley Dep. at 35 (emphasis added).

Henley's May 29, 1996 letter and her testimony also suggest that the Postal Service maintained a single list of eligible job applicants that is not job-specific. If so, the fact that the Postal Service removed Pinckney's name from its "list of eligibles" tends to support Pinckney's contention that the Postal Service viewed

11

him as unable to perform the entire range of jobs offered by the Postal Service. Indeed, Pinckney himself testified that in 1995 and 1996, he actually applied for three or four positions at the Tampa Post Office, but the Postal Service never definitively reviewed his other applications after he was denied the Mail Handler position.[6]

Viewing this evidence in the light most favorable to Pinckney, Pinckney has presented a question of material fact as to whether the Postal Service in 1996 regarded him as "disabled." In particular, construing the evidence in Pinckney's favor, Pinckney has presented a question of material fact as to whether, in 1996, the Postal Service considered him unable to perform all entry-level positions at the Postal Service and therefore considered him unable to perform a "broad class of jobs." Sutton, 527 U.S. at 491, 119 S.Ct. at 2151. The record does not limit the range of entry level positions which the Postal Service apparently believed Pinckney unable to perform, nor does it preclude the possibility that the Postal Service rejected Pinckney's applications for positions other than Mail Handler because it regarded him as unable to perform a wider range of duties than the functional requirements of the Mail Handler position. For that matter, the parties have not defined the functional requirements of the Mail Handler position itself,

---

[6]The positions mentioned by Pinckney are Mail Handler, Mail Processor, Cleaner/Custodian, and Tractor-Trailer operator. Pinckney Dep. at 58-59.

12

making it impossible to determine whether they are requirements applicable to a "broad class of jobs." Accordingly, factual disputes remain as to whether the Postal Service regarded Pinckney as unable to perform a broad range of jobs and therefore regarded Pinckney as disabled.[7]

## B. Qualified Individual

The Postal Service proposes that even if questions of material fact exist as to whether it regarded Pinckney as disabled, we should affirm summary judgment on the alternative grounds that Pinckney failed to show that he was "otherwise qualified for the position." See Ellis, 432 F.3d at 1326. Again, based on the record at this juncture, we conclude that questions of material fact preclude summary judgment on these grounds.

A "qualified individual" is an individual who can perform, with or without reasonable accommodation, the essential functions of the employment position that the individual held or desires. 42 U.S.C. § 12111(8); Davis v. Fla. Power & Light, Co., 205 F.3d 1301, 1305 (11th Cir. 2000). Thus, if Pinckney is unable to perform (even with accommodation) an essential function of the Mail Handler position, he

---

[7]We find unconvincing the district court's reliance on the fact that the Postal Service hired Pinckney as a tractor-trailer operator in 2000. That the Postal Service did not regard Pinckney as disabled in 2000 says nothing about whether different decision-makers at the Postal Service regarded Pinckney as disabled at the time it rejected his application in 1996. This is especially so given that Henley's May 29, 1996 rejection letter referred to Pinckney's incapacity to perform the duties either of the Mail Handler position or of "any entry position."

is not a "qualified individual" covered under the Rehabilitation Act, and he has failed to state a prima facie case. Id.[8]

An individual is also not a "qualified individual" if, by performing the duties of a given position, he would pose a "direct threat" to himself. The ADA defines a "direct threat" as "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). Regulations have extended the definition of "direct threat" to include threats to the worker himself. See 29 C.F.R. § 1630.2(r); Chevron U.S.A., Inc. V. Echazabal, 536 U.S. 73, 87, 122 S. Ct. 2045, 2053 (2002) (upholding 29 C.F.R. § 1630.2(r)).

The Postal Service contends that Pinckney would have represented a direct threat to his own health and safety were he to work in the position of Mail Handler. The Postal Service points to Dr. Lopez's statement that Pinckney had "a greater than 50% chance of having severe back problems in the near future and requiring surgery" and that "heavy work like lifting, standing, [and] changing positions" might aggravate his knee. The Postal Service also cites the fact that the VA had found Pinckney's injuries to impair his earning capacity by 20%.

However, there is also medical evidence in the record that Pinckney could perform the job without representing a direct threat to himself. Both Dr. Lopez and

---

[8]"Essential functions" are defined as the fundamental duties of a job that a disabled employee actually is required to perform. 29 C.F.R. § 1630.2(n)(2)(i).

Dr. Scott opined that Pinckney was able to perform the functional requirements of the Mail Handler position, including lifting over seventy pounds. Although Dr. Lopez suggested that the job might aggravate Pinckney's knee condition, he did not explicitly classify this as a "significant risk" to Pinckney's health or safety, nor did he suggest that Pinckney should be denied the job. More importantly, Dr. Scott explained that he had personally observed Pinckney lifting weights up to seventy pounds and pushing them for fifteen minutes without difficulty, and Dr. Scott made no reference to any potential risks posed by the Mail Handler position. In addition, the record includes no evidence at all as to whether reasonable accommodations to the Mail Handler position could have alleviated any risks, or at least any substantial risks, posed to Pinckney by working as a Mail Handler. Viewed in the light most favorable to Pinckney, factual questions remain as to whether he was "a qualified individual" for the Mail Handler position.

## III. CONCLUSION

In conclusion, we reverse and vacate the district court's order, dated June 16, 2005, granting summary judgment in favor of the Postal Service, and we remand this case to the district court for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

15